# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

—————————————

№ CV-18-3800 (JFB)

—————————————

STEVEN MCMANUS,

Petitioner,

VERSUS

SUPERINTENDENT MARY VANN,

Respondent.

—————————————

**MEMORANDUM AND ORDER**
August 9, 2019

—————————————

FILED
CLERK

8/9/2019 2:23 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

JOSEPH F. BIANCO, Circuit Judge (sitting by designation):

Steve McManus ("petitioner") petitions this Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his convictions in New York State Court. On June 15, 2015, following a jury trial in the Supreme Court of New York, Nassau County (the "trial court"), petitioner was convicted of sexual abuse in the first degree (N.Y. Penal Law ("NYPL") § 130.65[1]), and criminal obstruction of breathing or blood circulation (NYPL § 121.11). Petitioner was sentenced to seven years' imprisonment, with a concurrent sentence of one year incarceration, followed by fifteen years of post-release supervision.

Petitioner challenges his convictions on the single ground of prosecutorial misconduct during summation. Specifically, petitioner claims that the prosecutor (1) referenced matters not in evidence; (2) vouched for the witnesses; (3) acted as an unsworn witness; (4) attempted to shift the burden; (5) attacked petitioner's trial counsel rather than the evidence; and (6) mischaracterized the evidence. (Pet. 6, ECF No.1)

For the reasons discussed below, petitioner's request for a writ of habeas corpus is denied in its entirety.

I.  BACKGROUND

The following facts are adduced from the petition, respondent's answer and memorandum in opposition, and the underlying record.

1

## A. Factual Background

### 1. The Evidence

On the evening of August 29, 2013, Mary Doe[1] entered Jack Duggan's Pub in Floral Park with a small group of friends. (T. 641-45.)[2] Shortly thereafter, Mary went to the ladies' restroom. (T. 648-49.) The restroom was divided by a door into two areas: the sink area and the toilet area. (T. 650.) Mary entered the sink area where she waited and began texting on her phone. (*Id.*) Moments later, petitioner entered the ladies' room. (T. 653.) When petitioner entered the sink area, he began to sing, make small talk, and kiss Mary. (*Id.*) Believing he was drunk, Mary pushed petitioner aside and told him he was confusing her for someone else. (T. *Id.*) According to Mary, petitioner became aggressive and continued to kiss her on the neck. (T. 654.) Mary began to scream. (T. 655.) Her phone was knocked out of her hand and fell between the doorway and the sink. (T. *Id.*) Petitioner then grabbed her by the neck, covering Mary's mouth, and pushed her into the toilet area. (T. 654-55.) Once inside, petitioner pulled Mary's dress straps down. (T. 670.) He then groped her breasts and continued to try to kiss her neck. (T. 654, 658.) According to Mary, petitioner raped her at this time. (T. 654-55.)

Svetlana Chirokikh, a friend of Mary's, testified that, during this time, Mary's friends became concerned about how long she had been in the restroom and enlisted the bar's co-owner, who used a butter knife to unlock the door to the ladies' room. (T. 932-33.) Once the door began to open, petitioner dropped Mary and walked passed Chirokikh on his way out the bathroom. (T. 934.) Chirokikh noticed that he was "fiddling" with either his fly or belt. (*Id.*) Chirokikh then entered the toilet area and saw Mary, crouched on the floor, crying. (T. 935.) Chirokikh then told the owner and another individual to apprehend petitioner. (*Id.*) After returning to Mary's side, Mary, in a state of shock, told Chirokikh that petitioner had sexually assaulted her and that she thought she was going to die. (*Id.*) John Duggan, the owner of Jack Duggan's Pub (T. 474-75), testified that he saw the petitioner exit the ladies' room and head toward the back door (T. 540-41). Duggan also saw Mary, with her blouse open, crying on the floor in the bathroom (T. 545), before following one of Mary's friends, Evan Triantafilis, out the back door in pursuit of petitioner (T. 542). Duggan and Triantafilis then found petitioner hiding in the bushes, buckling his belt. (T. 548-51.) They then kept him from leaving the area until the police arrived. (T. 553-54.)

Mary was questioned by Nassau County Detective Susan Entenmann who observed no visible injuries. (T. 986.) She was transported to the hospital and examined by Theresa Dillman, a Sexual Assault Nurse Examiner ("SANE" nurse). (T. 806.) The exam revealed that Mary's injuries included three tears to her vagina (T. 829-33), redness on both sides of her neck, and abrasions on her upper buttocks and the back of her arms. (T. 819-20.) Petitioner's DNA was found on Mary's neck. (T. 1024-25.)

### 2. Trial

#### a. Petitioner's Written Statement to Investigating Detective

During opening statements, petitioner's counsel described the encounter between

---

[1] The victim will be referred to herein by the pseudonym "Mary Doe" for purposes of confidentiality.

[2] "T." refers to the trial transcript submitted by the government. (ECF Nos. 6-3 to 6-18.)

petitioner and Mary as consensual. (T. 425-26.) Counsel explained that, when petitioner entered the toilet area of the bathroom, he found Mary sitting on the toilet. (T. 426.) Petitioner excused himself and re-entered the sink area. (T. 426.) After Mary was done, she rejoined petitioner in the sink area and began to dance with petitioner. (T. 426.) According to petitioner's counsel, this is when petitioner and Mary began kissing. (T. 426.) Counsel told the jury that Mary slapped petitioner after he commented on her weight. (*Id.*) In his affidavit in support of the petition, petitioner's counsel states that he mentioned these details from petitioner's written statement in the opening because he had anticipated that the detective who took the statement would be called as a witness during trial to admit this statement. (Aff. at 15, ECF No. 10.) However, the detective was not called as a witness, the statement was not admitted, and petitioner failed to produce evidence to support these claims made during opening.

b.  SANE Nurse Testimony

Theresa Dillman, the SANE nurse, testified during direct examination that she administered medication to Mary to prevent her from contracting a sexually transmitted disease. (T. 818.) Dillman testified that SANE nurses are required to conduct blood work tests for Hepatitis B, Hepatitis C, Human Immunodeficiency Virus ("HIV"), and syphilis. (T. 815.) She further testified it is also part of procedure to administer preventive treatments for gonorrhea, chlamydia, and trichomonas. (T. 815.) Dillman also explained that the hospital is obligated to ask any patient between the ages of 13 and 64 if they want to be tested for HIV to "reduce the instances of HIV." (T. 816.) If the patient is HIV-positive, it would

indicate that the patient contracted HIV prior to the assault and required a different medication regimen. (T. 816-17.) If the blood work shows the patient is negative, the patient is "prophylactically" treated and put on a 30-day medication regimen. (T. at 817.)

c.  DNA Specialist Testimony

DNA specialist Christopher Chillseyzn testified that he initially screened several articles of petitioner's clothing for the presence of blood (T. 1018), before further testing found that petitioner's DNA, collected from his shorts and T-shirt, was consistent with the DNA found on Mary's neck, (T. 1024-25). On cross-examination, Chillseyzn testified that he was primarily looking for blood on petitioner's clothing in order to test for human DNA and that, while he determined there was human DNA on petitioner's clothes, he could not say conclusively where that DNA came from (*i.e.*, from skin or from sexual contact with Mary). (T. 1037-39.) Petitioner's counsel also questioned Chillseyzn regarding the lack of Mary's DNA on petitioner's shorts or pants. (T. 1038-39.) On redirect, Chillseyzn testified that, in the hypothetical posed by petitioner's trial counsel, DNA specialists do not test for skin cells because, "[t]here will be millions of those present from the victim. So identifying skin cells from one person or another is not possible." (T. 1041.)

d.  Prosecutor's Summation[3]

In the beginning of her summation, the prosecutor asked the jury to take into consideration Mary's composure during cross-examination and direct examination. (T. 1132-35.) For instance, the prosecutor told the jury that the way Mary answered the questions was significant because it showed

---

[3] Below is a summary of the prosecutor's summation. A more detailed discussion regarding certain

comments that are the subject of the petition is contained in the legal analysis.

that she was not defensive or evasive and was respectful. (T. 1134-35.) The prosecutor pointed to Mary's continued answers despite the fact that it was uncomfortable for her, even when petitioner's trial counsel asked Mary an "offensive" question (T. 1135). Moreover, the prosecutor argued that Mary had no motive to lie. (T. 1136-37.) The prosecutor also pointed out that, although petitioner's trial counsel had suggested the encounter was consensual, there was no evidence in the trial record to support that. (T. 1139.) In doing so, she reminded the jury that "what defense counsel says, what I say is not evidence." (T. 1139.) The prosecutor also pointed to evidence demonstrating the encounter was not consensual. For example, Duggan, the owner of the bar, had testified that after petitioner was arrested, he found Mary's phone in the garbage pail near the sink area of the bathroom. (T. 559.) During summation, the prosecutor argued that Duggan's testimony indicates that there was a struggle between Mary and the petitioner because "no 22-year-old girl is throwing her phone into the garbage pail in a bar." (T. 1164.)

Later in the summation, the prosecutor mentioned petitioner's trial counsel's opening in which he suggested, in detail, that the encounter was consensual. (T. 1189.) The prosecutor reiterated that there was "no evidence that this was consensual" between petitioner and Mary. (*Id.*) Trial counsel objected when the prosecutor began to rebut the version of the facts referenced in the opening by petitioner's counsel – namely, that upon the petitioner entering the bathroom, Mary asked him to stay. (*Id.*) When petitioner's trial counsel pointed out that there was no evidence of that version of the facts (although he opened on it), the court then stated, "I agree there's no evidence to that effect. I believe Ms. Burke is referring to something said on opening statements.

And I remind the jurors again anything said by the attorneys in opening, closing, or anything at other times throughout the trial is not evidence in the case." (Tr. 1189-90.) The prosecutor then pointed out that she was only mentioning the opening statement to show there was a lack of evidence to prove the encounter was consensual. (T. 1190.) The objection was overruled. (*Id.*)

The prosecutor then discussed the SANE nurse's testimony. (T. 1195-96.) She argued that a patient would not need to be tested for "HIV or gonorrhea or chlamydia or trichomonas" if the encounter only involved consensual kissing. (T. 1195.) Petitioner's trial counsel objected on the grounds that Mary was never told she was being treated for gonorrhea. (T. 1196.) The court overruled the objection, stating that "the jury's recollection will control." (*Id.*)

The prosecutor also presented footage from security cameras showing that that petitioner had been watching Mary at the bar. (T. 1154.) The prosecutor also argued that petitioner observed the cast on Mary's arm, and knew Mary was in a "vulnerable" condition that night. (T. 1154.) Petitioner objected to this statement, but it was overruled, with the court stating, "They are comments." (T. 1154)

Finally, the prosecutor concluded her summation by asking the jury to "[t]ell this defendant with [its] verdict that what [petitioner] did to Mary is not acceptable…. Tell this defendant he's guilty beyond a reasonable doubt on each and every count of this indictment." (T. 1203-04.)

e. Motion for Mistrial & Jury Instructions

After summation, petitioner's trial counsel submitted a motion for a mistrial and

objected to the prosecutor's attack of his opening statement. (T. 1207.) Trial counsel argued that allowing the prosecutor to repeat these statements shifted the burden onto petitioner. (*Id*.) The court denied the application, finding that the prosecutor did not say anything to shift the burden. (T. 1207-08.) However, the judge said he would "reiterate and emphasize again . . . that anything said by counsel on opening statement or summation or in argument to the Court is not evidence in the case and is not to be considered as such." (T. 1208).

During jury instructions, the court emphasized to the jury that anything said by counsel in opening statements or summations was not evidence. (T. 1214.) The court also instructed the jurors that if "the attorneys, during the course of their summations, or I, in my charge, allude to the facts and your recollection of those facts disagrees with the attorneys or my recital, you must disregard what we say. It is your recollection, understanding and evaluation of the facts which govern." (T. at 1214-15.)

f.   The Verdict and Sentence

The jury found petitioner guilty of sexual abuse in the first degree (NYPL § 130.65(1)) and criminal obstruction of breathing or blood circulation (*Id*. § 121.11). The petitioner moved to set aside the verdict pursuant to Criminal Procedure Law ("CPL") § 330.30. (ECF No. 6-19.) On August 31, 2015, the trial court denied the motion in its entirety.[4] (ECF No. 6-21.) During sentencing, petitioner's trial counsel addressed errors made in the presentence report. (ECF No. 6-22 at 8-13.) The sentencing court stated that the "minutes will go along with the defendant" as well as the

report. (*Id*. at 17.) The petitioner was sentenced to seven years' imprisonment, with a concurrent sentence of one-year incarceration, followed by fifteen years of post-release supervision. (*Id*. at 17.)

B.   Procedural History

1.   State Procedural History

On June 8, 2016, petitioner filed a direct appeal to the Supreme Court, Appellate Division, Second Department, in which he argued, *inter alia*, that the prosecutor's summation mischaracterized the evidence, referred to matters not in evidence, shifted the burden of proof, denigrated the defense, improperly appealed to the sympathy of the jury, deprived appellant of a fair trial, and that the verdict was against the weight of the evidence. The petitioner also requested a new pre-sentencing hearing. (*See* ECF No. 6, at i-ii.)

On May 3, 2017, the Appellate Division denied his appeal on both procedural and substantive grounds. *See People v. McManus*, 53 N.Y.S.3d 368 (2d Dep't 2017). In affirming his conviction, the Appellate Division rejected petitioner's argument that the verdict was against the weight of the evidence, holding that the evidence was "legally sufficient to establish defendant's guilt beyond a reasonable doubt." *Id*. at 763. In addition, the Appellate Division held that most of defendants' claims of prosecutorial misconduct were unpreserved for appellate review, and in any event, were within "the bounds of permissible comment, fair response to the defendant's attack on the credibility of the complainant, fair comment on the evidence and the reasonable inferences to be drawn therefrom, or permissible

---

[4] Trial court held that petitioner's moving papers were insufficient as a matter of law to authorize the court to set aside the verdict pursuant to § 330.30 (1).

rhetorical comment." (*Id.*) The Appellate Division also stated that "any improper comments were isolated and not so egregious that they deprived the defendant of a fair trial." (*Id.*) Finally, to the extent that any prejudice may have resulted from certain remarks, the Appellate Division held that it was "ameliorated by the Supreme Court's curative instructions to the jury." (*Id.*)

Petitioner sought leave to appeal to the New York State Court of Appeals from the Appellate Division's decision affirming the convictions, arguing prosecutorial misconduct during summation. (ECF No. 6-27.) On July 25, 2017, the New York Court of Appeals denied petitioner leave to appeal. *See McManus*, 29 N.Y.3d 1093.

## 2. The Instant Petition

On July 2, 2018, petitioner moved before this Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, on the ground that the cumulative effect of the prosecutor's improper comments during summation overwhelmed petitioner's right to a fair trial. Specifically, petitioner claims that during summation, the prosecutor: (1) referenced matters not in evidence; (2) vouched for the witnesses; (3) acted as an unsworn witness; (4) attempted to shift the burden; (5) attacked trial counsel rather than the evidence; and (6) mischaracterized the evidence. (*See* Pet. 6.) Respondent filed an answer and memorandum of law opposing the petition on October 5, 2015. (ECF No. 6.) On November 5, 2018, petitioner's trial counsel filed an affidavit in support of petitioner. (ECF No. 10.) On July 16, 2019, petitioner's trial counsel filed an affirmation with updated copy of the trial transcript. (ECF No. 12.) The Court has fully considered all submissions of the parties.

## II. STANDARD OF REVIEW

To determine whether petitioner is entitled to a writ of habeas corpus, a federal court must apply the standard of review set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which provides, in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented by the State court proceedings.

28 U.S.C. § 2554. "Clearly established Federal law" is comprised of "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a

conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." (*Id.*)

AEDPA establishes a deferential standard of review: "'a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411). The Second Circuit added that, while "'[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence.'" *Id.* (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)). Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed de novo.'" *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009) (quoting *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)).

## III.   DISCUSSION

Petitioner argues that the cumulative effect of the prosecutor's improper comments during summation deprived petitioner of his right to a fair trial. Specifically, petitioner argues that the prosecutor's summation included: (1) mention of matters not in evidence; (2) the prosecutor vouching for her witness; (3) the prosecutor acting as an unsworn witness; (4) attempts to shift the burden to petitioner; (5) attacks on trial counsel rather than the evidence; and (6) mischaracterization of the evidence. (*See* Pet. 6).

For the reasons discussed below, the Court denies the petition in its entirety. As a threshold matter, some of petitioner's claims as to the summation-related prosecutorial misconduct are procedurally barred. In any event, the Court has reviewed all of petitioner's claims and finds that habeas relief is unwarranted.

### A.   Procedural Bar

#### 1.   Independent and Adequate State Ground

A petitioner's federal claims may be procedurally barred from habeas review if they were decided at the state level on "independent and adequate" state procedural grounds. *Coleman v. Thompson*, 501 U.S. 722, 729–33 (1991); *accord Michigan v. Long*, 463 U.S. 1032, 1041 (1983). A procedural rule is adequate if it is "firmly established and regularly followed by the state in question." *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999) (quoting *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)). To be independent, the "state court must actually have relied on the procedural bar as an independent basis for its disposition of the case" and by "clearly and expressly stat[ing] that its judgment rests on [this] state procedural bar." *Harris v. Reed*, 489 U.S. 255, 261-65 (1989); *see also Allan v. Conway*, No. 08–CV–4894 (JFB), 2012 WL 70839, at *9 (E.D.N.Y. Jan. 10, 2012) ("The appellate court's statement that petitioner's claim was 'unpreserved' is sufficient to establish that it was relying on a procedural bar as an independent ground in disposing of the issue." (citation omitted)); *Figueroa v. Grenier*, No. 02 Civ. 5444 DAB, 2005 WL 249001, at *8 (S.D.N.Y. Feb. 3, 2005) (citing *Harris*, 489 U.S. at 265 n.12) (same). In addition, a state court's reliance on an independent and adequate procedural bar

precludes habeas review even if the state court also rejected the claim on the merits in the alternative. *See, e.g.*, *Harris*, 489 U.S. at 264 n.10 (holding that "a state court need not fear reaching the merits of a federal claim in an alternative holding," so long as the state court "explicitly invokes a state procedural bar rule as a separate basis for decision"); *Glenn v. Bartlett*, 98 F.3d 721, 725 (2d Cir. 1996) (same).

A federal habeas court may not review a procedurally barred claim on the merits unless the petitioner can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim . . . will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. A petitioner may demonstrate cause by showing one of the following: "(1) the factual or legal basis for a petitioner's claim was not reasonably available to counsel, (2) some interference by state officials made compliance with the procedural rule impracticable, or (3) the procedural default was the result of ineffective assistance of counsel." *McLeod v. Graham*, No. 10 Civ. 3778(BMC), 2010 WL 5125317, at *3 (E.D.N.Y. Dec. 9, 2010) (citing *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994)). Such prejudice can be demonstrated by showing that the error "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Torres v. Senkowski*, 316 F.3d 147, 152 (2d Cir. 2003) (citations omitted). A miscarriage of justice is demonstrated in extraordinary cases, such as where a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). To overcome a procedural default based on a miscarriage of justice, the petitioner must demonstrate that "more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 536-37 (2006) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

2. New York's Preservation Doctrine

On direct appeal, the Appellate Division concluded that petitioner's claims alleging prosecutorial misconduct during summation were unpreserved pursuant to New York's contemporaneous objection rule, codified at C.P.L. § 470.05(2). *McManus*, 150 A.D.3d at 763 ("Most of the defendant's claims that certain of the prosecutor's summation remarks deprived him of a fair trial are unpreserved for appellate review (*see* CPL 470.05 [2]).").

"New York's contemporaneous objection rule provides that a party seeking to preserve a claim of error at trial must lodge a protest to the objectionable ruling 'at the time of such ruling . . . or at any subsequent time when the [trial] court had an opportunity of effectively changing the same.'" *Whitley v. Ercole*, 642 F.3d 278, 286 (2d Cir. 2011) (citing C.P.L. § 470.05(2)). "New York courts consistently interpret § 470.05(2) to require that a defendant specify the grounds of alleged error in sufficient detail so that the trial court may have a fair opportunity to rectify any error." *Garvey v. Duncan*, 485 F.3d 709, 715 (2d Cir. 2007) (citation omitted). Thus "[a] general objection is not sufficient to preserve an issue" because a "defendant must specifically focus on the alleged error." *Id.* at 714 (collecting state court authority); *see also, e.g.*, *McCall v. Capra*, 102 F. Supp. 3d 427, 445 (E.D.N.Y. 2015) ("'The word objection alone [is] insufficient to preserve the issue for [appellate] review' in the New York state courts." (quoting *People v. Tevaha*, 644 N.E.2d 1342, 1342 (1994))); *Umoja v. Griffin*, No. 11 CV 0736(PKC)(LB), 2014 WL 2453620, at *21 (E.D.N.Y. May, 29 2014) (holding that petitioner's claim was procedurally barred

despite "petitioner's counsel's timely object[ions]" because "counsel was not specific in his objections"); *Adams v. Artus*, No. 09–cv–1941 (SLT)(VVP), 2012 WL 1077451, at *7 (E.D.N.Y. Feb. 24, 2012) (finding that because counsel "twice only stated 'Objection' . . . these objections did not likely meet the specificity required to be preserved on appeal under New York's preservation rule.").

The Second Circuit has "held repeatedly that the contemporaneous objection rule is a firmly established and regularly followed New York procedural rule." *Downs v. Lape*, 657 F.3d 97, 104 (2d Cir. 2011) (citing *Whitley*, 642 F.3d at 286-87; *Richardson v. Greene*, 497 F.3d 212, 219 (2d Cir. 2007); *Garvey*, 485 F.3d at 718; *Taylor v. Harris*, 640 F.2d 1, 2 (2d Cir. 1981) (per curiam)). Furthermore, the Second Circuit has "observed and deferred to New York's consistent application of its contemporaneous objection rules." *Garcia*, 188 F.3d at 79 (citation omitted); *see also Bossett*, 41 F.3d at 829 n.2 (respecting state court's application of § 470.05(2) as an adequate bar to federal habeas review); *Fernandez v. Leonardo*, 931 F.2d 214, 216 (2d Cir. 1991) (noting that failure to make objection at trial constitutes adequate procedural default under § 470.05(2)). Thus, the New York preservation doctrine provides an independent and adequate ground for decision on habeas review.

### 3. Analysis

Here, the Appellate Division properly decided that certain of the petitioner's claims of prosecutorial misconduct were procedurally barred on, holding that they "were unpreserved for appellate review" under § 470.05(2). *McManus*, 150 A.D.3d at 763. The Appellate Division's holding was adequate and independent because it "clearly and expressly stat[ed] that its judgment rests on a state procedural bar." *Reed*, 489 U.S. 263; *Harris*, 489 U.S. at 263; *see also Allan*, 2012 WL 70839, at *9 ("The appellate court's statement that petitioner's claim was 'unpreserved' is sufficient to establish that it was relying on a procedural bar as an independent ground in disposing of the issue." (citation omitted)).

Thus, petitioner's claims that the prosecutor vouched for witnesses, acted as an unsworn witness, and attacked trial counsel rather than the evidence are not preserved for habeas review because petitioner failed to object and "specify the grounds of alleged error in sufficient detail so that the trial court may have a fair opportunity to rectify any error." [5] *Duncan*, 485 F.3d at 715. Therefore, the Court, as explained above, can review these particular claims only if petitioner shows cause for the default and prejudice resulting therefrom, or shows that a miscarriage of justice would result if the Court did not review the claims. However, petitioner has made no such showing.

Petitioner argues that trial counsel failed to comply with § 470.05 because he "was afraid too many 'overruled' objections would prejudice the jury against petitioner." (Aff. 13.) This explanation does not constitute cause for procedural default. *See Carrier*, 477 U.S. at 486-87 (finding that "[t]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does

---

[5] Petitioner's other claims that the prosecutor: (1) referenced matters not in evidence; (2) mischaracterized the evidence; and (3) shifted the burden were appropriately objected to and thus are not procedurally barred. However, as discussed below, they fail on the merits.

not constitute cause for a procedural default" and holding that "ignorant or inadvertent attorney error" is not cause for any resulting procedural default). Additionally, trial counsel's own strategic decisions regarding his objections[6] are not "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." *Carrier*, 477 U.S. at 488.

In any event, petitioner cannot show prejudice, much less a manifest injustice, because, as discussed below, the trial court ameliorated any potential prejudice that may have resulted from certain remarks by issuing curative instructions to the jury. *McManus*, 150 A.D.3d at 763. Additionally, petitioner has failed to show this case would result in a miscarriage of justice if the Court failed to review the claims on the merits because he has not demonstrated that, absent the objectionable conduct by the prosecutor, "more likely than not . . . no reasonable juror would find him guilty beyond a reasonable doubt." *House*, 547 U.S. at 536-38. Thus, certain portions of petitioner's prosecutorial misconduct claim (namely, that the prosecutor vouched for witnesses, acted as an unsworn witness, and attacked petitioner's trial counsel rather than the evidence) are procedurally barred. However, in an abundance of caution, the Court has examined all of petitioner's claims on the merits and concludes that they all fail on the merits for the reasons discussed *infra*.

## B. Merits Analysis

Petitioner argues that the cumulative effect of the prosecutor's improper comments during summation deprived petitioner's right to a fair trial. With respect to the merits, the Appellate Division held that "some of the challenged portions of the prosecutor's summation were within the bounds of permissible comment, fair response to the defendant's attack on the credibility of the complainant, fair comment on the evidence and the reasonable inferences to be drawn therefrom, or permissible rhetorical comment." *McManus*, 150 A.D.3d at 763 (citing *People v. Halm*, 81 N.Y.2d 819, 821 (1993); *People v. Ashwal*, 39 N.Y.2d 105, 110 (1976); *People v. Ramrattan*, 126, 6 N.Y.S.3d 131, 133 (2015)). The Appellate Division further held that, "[t]o the extent that any prejudice may have resulted from certain remarks, it was ameliorated by the Supreme Court's curative instructions to the jury . . . , which the jury is presumed to have followed." *McManus*, 150 A.D.3d at 763 (citations omitted). Finally, the Appellate Division concluded that "[a]ny improper comments were isolated and not so egregious that they deprived the defendant of a fair trial." *Id.* (citations omitted).

For the reasons set forth below, the Court agrees with the Appellate Division regarding the merits. The Appellate Division's decision was not contrary to, nor did it involve an unreasonable application of, clearly established federal law, nor was it an unreasonable application of the facts in light of the evidence in the record. In short, none of the alleged misconduct in the summation, either individually or collectively, provides a basis for habeas relief in this case.[7]

---

[6] In the ineffective assistance of counsel context, the Second Circuit has held that such strategic decisions are not indicative of counsel's ineffectiveness. *See United States v. Walker*, 24 F. App'x 57, 60 (2d Cir. 2001) (stating that "in light of the overwhelming government proof, trial counsel's strategic decision to try to maintain credibility with the jury could hardly

be considered ineffective assistance of counsel" and that failing to make certain objections is an example of the "kind of strategic decisions left to the discretion of trial counsel" (citation omitted)).

[7] Petitioner points to a litany of the prosecutor's statements without any analysis. (*See* Pet. 20-25.)

### 1. Legal Standard

"A criminal conviction 'is not to be lightly overturned on the basis of a prosecutor's comments standing alone' in an otherwise fair proceeding." *Gonzalez v. Sullivan*, 934 F.2d 419, 424 (2d Cir. 1991) (quoting *United States v. Young*, 470 U.S. 1, 11 (1985)). "It is 'a rare case' in which improper comments in a prosecutor's summation are so prejudicial that a new trial is required." *United States v. Newton*, 369 F.3d 659, 680 (2d Cir. 2004) (quoting *United States v. Rodriguez*, 968 F.2d 130, 142 (2d Cir. 1992)); *see also United States v. Shareef*, 190 F.3d 71, 78 (2d Cir. 1999) ("[P]rosecutorial misconduct is a ground for reversal only if it causes the defendant 'substantial prejudice.'") (quoting *United States v. LaMorte*, 950 F.2d 80, 83 (2d Cir. 1991)); *Johnson v. Conway*, No. 08–CV–3302 (DLI), 2010 WL 3942897, at *6 (E.D.N.Y. Oct. 6, 2010) (noting that "the propriety of comments made by a prosecutor during summation generally does not present a meritorious federal question" (quoting *Sims v. Ercole*, No. 09 Civ. 4398, 2010 WL 1685434, at *9 (S.D.N.Y. Apr. 23, 2010)) (internal citation omitted)). For prosecutorial misconduct to amount to constitutional error, "it is not enough that the prosecutor's remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citation omitted). Instead, the prosecutor's comments "must represent 'egregious misconduct.'" *Celleri v. Marshall*, No. 07–CV–4114 (JFB), 2009 WL 1269754, at *17 (E.D.N.Y. May 6, 2009) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)); *accord Shareef*, 190 F.3d at 78.

To warrant relief, the Court must conclude that the comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181 (quoting *Donnelly*, 416 U.S. at 647). However, "not every trial error or infirmity which might call for the application of supervisory powers correspondingly constitutes a 'failure to observe that fundamental fairness essential to the very concept of justice.'" *Donnelly*, 416 U.S. at 642 (quoting *Lisenba v. California*, 314 U.S. 219, 236 (1941)). Rather, a petitioner must show that he "suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict." *Bentley v. Scully*, 41 F.3d 818, 824 (2d Cir. 1994). Factors considered in determining such prejudice include "(1) the severity of the prosecutor's conduct; (2) what steps, if any, the trial court may have taken to remedy any prejudice; and (3) whether the conviction was certain absent the prejudicial conduct" (the "*Bentley* factors"). *Id.* (citing *Gonzalez v. Sullivan*, 934 F.2d 419, 424 (2d Cir. 1991)). This test applies to improper questions in examining witnesses as well as to improper comments made in summation. *See United States v. Melendez*, 57 F.3d 238 (2d Cir. 1995) (summation); *United States v. McCarthy*, 54 F.3d 51, 55-56 (2d Cir. 1995) (cross-examination).

Moreover, "[w]hen analyzing the severity of alleged misconduct, the court examines the prosecutor's statements in the context of the entire trial." *Miller v. Barkley*, No. 03 Civ. 8580 (DLC), 2006 WL 298214, at *2 (S.D.N.Y. Feb. 8, 2006) (citing *United States v. Thomas*, 377 F.3d 232, 244 (2d Cir. 2004)); *accord Jackson v. Conway*, 763 F.3d 115,

---

Although the Court does not refer to each and every statement in its analysis, the Court has reviewed the entire summation (and all of the statements to which petitioner objects in this petition) and concludes that they do not individually or collectively rise to the level of a constitutional violation that would warrant habeas relief in this case.

146 (2d Cir. 2014) ("The habeas court must consider the record as a whole . . . because even a prosecutor's inappropriate or erroneous comments or conduct may not be sufficient to undermine the fairness of the proceedings when viewed in context." (citations omitted)). In *Floyd v. Meachum*, for example, the court recognized one of those "rare cases" where prosecutorial misconduct was so egregious as to warrant reversal, and, in doing so, "emphasize[d] that [its] holding . . . [was] based on the cumulative effect of the three alleged categories of improper remarks," and that the "case [did] not involve one, or a few isolated, brief episodes; rather, it involve[d] repeated and escalating prosecutorial misconduct from initial to closing summation." 907 F.2d 347, 353 (2d Cir. 1990). In that case, "the evidence against [petitioner] was not heavy," *id.* at 356, and the prosecutor: (1) made "references to the Fifth Amendment [that] could well have been interpreted by the jury as a comment on [the defendant]'s failure to testify," *id.* at 353; (2) "repeated remarks that the Fifth Amendment was 'a protection for the innocent' and not 'a shield' for 'the guilty' [that] incorrectly stated the law by diluting the State's burden of proof beyond a reasonable doubt and undermining the presumption of innocence," *id.* at 354; (3) "impermissibly asked the jury to pass on her personal integrity and professional ethics before deliberating on the evidence, thereby implying that she personally vouched for [a key witness's] credibility," *id.*; and, (4) "characterized [the defendant], who did not testify, as a liar literally dozens of times throughout her opening and closing summations," *id.*, and, (5) "erroneously equated [the defendant]'s alleged lies with proof of guilt beyond a reasonable doubt," *id.* at 355. The Second Circuit held that "under the totality of the circumstances presented here, that the cumulative effect of the prosecutor's persistent and clearly improper remarks amounted to such egregious misconduct as to render Floyd's trial fundamentally unfair." *Id.* at 353.

## 2. Application

Here, petitioner argues that the prosecutor: (1) mentioned matters not in evidence; (2) vouched for her witness; (3) acted as an unsworn witness; (4) attempted to shift the burden to petitioner; (5) attacked trial counsel rather than the evidence; and (6) mischaracterized the evidence. (Pet. at 6.). As set forth below, petitioner's claims are without merit.

### a. Claim Regarding Reference to Matters Not in Evidence

Petitioner argues that the prosecutor, in her summation, referenced matters not in evidence. (Pet. 6.) However, petitioner cites to examples that would fall within fair commentary by the prosecutor on the evidence and reasonable inferences that can be drawn from such evidence, as well as on the lack of evidence to support the defense's theory of the case.

For example, in his affidavit in support of the petition, trial counsel also directs the Court to the prosecutor's remarks regarding the security camera footage of the victim – with her cast – being within sight of petitioner and in a position of vulnerability. (Aff. 13-14.) Although counsel refers to that statement as "mind reading" at best (*id.* at 14), a prosecutor is permitted to argue to the jury that an individual, in the particular position of the defendant on that video, would be able see Mary's cast and may further argue how those observations of the cast may have impacted the defendant's mental state. Thus, there is no basis to disturb the trial court's ruling that this argument by the prosecutor was fair commentary on

inferences that could be drawn from the video and the trial record as a whole.[8] (T. 1154.)

Similarly, petitioner argues that the prosecutor improperly referenced trial counsel's opening statements about the encounter being consensual, even though trial counsel's opening is not evidence. Petitioner contends that this was done to set up a "straw man's argument." (Aff. 15-16.) However, that argument also is without merit. The record reflects that the prosecutor was merely responding to the suggestion by trial counsel that the encounter between petitioner and Mary was consensual. Not only did trial counsel make that suggestion in his opening, he repeated that suggestion in his summation.[9] By referring to the trial counsel's opening, the prosecutor was not attempting to argue the existence of facts outside the record; rather, the purpose was the exact opposite – namely, to show the absence of facts to support a consensual encounter. (T. 1139, 1165, 1189-90.) It is well settled that "the prosecution is entitled to respond to the arguments raised by the defense in summation." *People v. Rivera*, 551 N.Y.S.2d 34 (1st Dep't 1990) (citing *People v. Galloway*, 54 N.Y.2d 396 (1981)). Accordingly, the trial court did not err in overruling the prosecutor's arguments in this regard.

In any event, even assuming *arguendo* that petitioner is correct in his contention that the prosecutor improperly commented on evidence outside the record, such comments do not raise any constitutional concerns in the context of this case. First, the prosecutor's statements were not severe, especially in the context of trial counsel's arguments and attacks on the complainant's credibility.

Second, any prejudicial impact of the statements was neutralized by the trial judge's numerous instructions to the jury; both before and after the summations, in which the trial judge explicitly instructed the jury that the lawyers' summations were not to be considered as evidence.[10] (T. 1093, 1208, 1214.) In fact, the prosecutor even reiterated this in reference to the trial counsel's opening, by telling the jury that "what defense counsel says, what [the prosecutor] says is not evidence." (T. 1139.)

Finally, petitioner has not shown that his conviction was uncertain absent these prosecutor's comments. As the Second Circuit has noted, "[o]ften, the existence of substantial prejudice turns upon the strength of the government's case: if proof is strong, then the prejudicial effect of the comments tends to be deemed insubstantial; if proof of guilt is weak, then improper statements are more likely to result in reversal." *United*

---

[8] The Court notes that the trial court also overruled a previous objection by the prosecutor as to trial counsel's purported mischaracterization of evidence, while stating that the prosecutor could "certainly comment as well." (T. 1106.) Thus, the trial court applied this rule evenly.

[9] In his opening, trial counsel describes a consensual "making out" without any forced contact. (T. 425-26, 429.) In his summation, petitioner's trial counsel again stated that the evidence "proves kissing, making out," not rape. (T. 1103.)

[10] For example, after summations, when petitioner's trial counsel raised some of these same concerns, the

court told the jury, "Throughout the trial I have advised you and I advise you again what was said by the attorneys either on their opening statements or on their closing statements are not evidence. What was said by the attorneys during the course of the trial in making an application to me is not evidence. The only evidence, again, comes from the testimony of the witnesses and in the form of the exhibits that have been admitted into evidence." (T. 1212.) Later, the court reiterated this point, telling the jury, "[y]our verdict must be based upon the evidence alone. Opening statements, summations and arguments and remarks of counsel are not evidence and may not be considered by you as evidence." (T. 1214.)

*States v. Modica*, 663 F.2d 1173, 1181 (2d Cir. 1981); *see also Bentley*, 41 F.3d at 824-25 (holding that a petitioner failed to demonstrate prejudice where there was "compelling evidence in the prosecution's case . . . [and] the prosecutor's summation comments were both brief and isolated"); *Bradley v. Meachum*, 918 F.2d 338, 343 (2d Cir. 1990) ("The clear evidence of guilt demonstrates that [petitioner] was not prejudiced by the prosecutor's improper remarks.").

Here, in addition to the victim, three witnesses (*i.e.*, Chirokikh, Duggan, and Triantafilis) provided crucial testimony. As explained above, Chirokikh testified that, after receiving assistance from Duggan in prying open the door, she saw petitioner rush out of the bathroom. (T. 933-34, 566-67.) Chirokikh saw, in the bathroom, Mary on the floor crying, with her dress hanging around her waist without a bra. (T. 935, 946.) Mary then immediately told Chirokikh that she had been sexually and physically assaulted (T. 935-36.) Duggan and Triantafilis then saw Mary on the floor of the bathroom, upset, with her chest uncovered. (T. 519, 541-42, 545, 613.) These two then chased petitioner outside, cornering him after he jumped a fence. (T. 545-47, 569, 613.) Petitioner's pants were unbuckled and neither Duggan nor Triantafilis saw him going to the bathroom in the area. (T. 551, 614.) Duggan and Triantafilis felt threatened and petitioner attempted to run away multiple times. (T. 577-78, 582-83, 585, 597, 598, 604.) Triantafilis testified that, after he accused petitioner of rape, petitioner responded that he would "get away with it" and was not afraid of jail or prison. (T. 615-16, 623-25.) Video footage at Duggan's also corroborated the testimony, capturing petitioner opening the door to a unisex bathroom, without entering, and then entering the ladies' bathroom, while Mary was in there. (T. 977-78.) The SANE nurse testified that Mary told her she had been sexually assaulted. (T. 809, 812, 867-68.) She also observed vaginal injuries, consistent with sexual assault, and noted them in the medical records. (T. 828-30, 846, 878-79, 902.) The SANE nurse also documented the injuries to Mary's upper buttocks, arms, and neck. (T. 819-20, 881-82, 912-13.) After testing, petitioner's DNA matched the DNA swabbed from Mary's neck. (T. 1024, 1034-35.)

In short, even assuming the statements were improper, "compelling evidence in the prosecution's case" was presented at trial allowing a jury to conclude beyond a reasonable doubt that petitioner was guilty without a significant probability that these "isolated" comments contributed to petitioner's conviction, or "had a substantial or injurious effect on the jury's verdict." *Bentley*, 41 F.3d at 825. Accordingly, these comments do not provide a basis for habeas relief in this case.

b. Claim Regarding Vouching for Witnesses

Petitioner next argues that the prosecutor vouched for her witness during summation. (Pet. 6.) The Court notes that there were no contemporaneous objections to the statements on the record and, in any event, agrees with the state court that the comments were appropriately made in response to defense counsel's summation. Specifically, each one of the allegedly improper statements responded to defendant's arguments regarding Mary's credibility.

It is well established under New York law that a prosecutor's summation comments regarding a witness's credibility are not considered improper vouching when offered as a fair response to attacks by the defense counsel during summation on the credibility of a prosecution witness. *See, e.g., People v.*

*Melendez,* 815 N.Y.S.2d 551, 559 (1st Dep't 2006) ("The portions of the prosecutor's summation to which defendant objected as 'vouching' were responsive to the defense summations and fair comment based upon the evidence.") (citing *People v. Overlee*, 666 N.Y.S.2d 572 (1997)); *People v. Beggs,* 796 N.Y.S.2d 826, 828 (4th Dep't 2005) ("In his summation, defense counsel commented on the credibility of the victim and her mother, and the comments of the prosecutor to which defense counsel raised an objection were directly related to those issues. Thus, the comments of the prosecutor were a fair response to the observations of defense counsel on summation and did not deprive defendant of a fair trial."), *appeal denied*, 803 N.Y.S.2d 32 (2005); *People v. Dixon,* 795 N.Y.S.2d 586, 587 (1st Dep't 2005) ("The challenged portions of the prosecutor's summation were responsive to the defense arguments, and did not . . . constitute improper vouching."), *appeal denied,* 804 N.Y.S.2d 42, (2005); *People v. Barber,* 787 N.Y.S.2d 424, 427 (3d Dep't 2004) (prosecutor's comments during summation that the victim had "no motive to lie" did not constitute improper vouching where "the defense ha[d] attacked the credibility of the prosecution witnesses in summation"), *appeal denied,* 795 N.Y.S.2d 171 (2005).

Moreover, as the Second Circuit has noted in the federal context, "the prosecution and defense are generally entitled to wide latitude during closing arguments so long as they do not misstate the evidence. Under the invited or fair response doctrine, the defense summation may open the door to an otherwise inadmissible prosecution rebuttal." *United States v. Tocco,* 135 F.3d 116, 130 (2d Cir. 1998)

(citing *United States v. Robinson,* 485 U.S. 25, 32 (1988)). Therefore, both New York and federal law recognize the prosecutor's right to rebut attacks on witness credibility during summations.

In the instant case, petitioner's trial counsel made several comments on the complainant's credibility during his summation, including:

(1) "She is 140 pounds. A bodybuilder couldn't hold 50 pounds out like that the amount of time she said it was going on. You couldn't - -I couldn't hold my briefcase out there for that long. That is incredible. She's gone too far." (T. 1100-01);

(2) "And she was confused when she was here. It went this way first: Two hands choking me. Then it was two hands, one on the throat, one on the shoulder, lifting me up off the ground," (T. 1101.); and

(3) "Can you believe Mary []$^{11}$? Is it plausible?" (T. 1104).

As a result, the prosecutor was entitled to rebut defense counsel's summation with contrary assertions. As such, the prosecutor's cited comments were proper. For instance, the prosecutor countered petitioner's attack by stating, "[T]his picture of a deceitful liar that defense counsel is trying to paint for you doesn't square with the person that you saw take the stand in this courtroom. That is not the appearance that she gives and you had an opportunity to evaluate her with your own eyes." (Def. T. 723:18-23.)$^{12}$ The prosecutor went on to say that "[a]ll the evidence in this case, every

---

[11] Last name omitted.

[12] Petitioner and trial counsel cite to a trial transcript (Def. T., ECF No. 12), with different pagination than that submitted by the respondent (ECF No. 6). Thus,

single piece of evidence supports what Mary says happened in that bathroom. And you've heard a lot of evidence in this trial . . . ." (*Id.* at 789:10-12.) Because "[a]n argument by counsel that his witnesses have testified truthfully is not vouching for their credibility," *Overlee*, 666 N.Y.S.2d at 580-81, these comments were not improper.

In any event, even assuming *arguendo* that the comments were improper, they do not rise to a constitutional dimension under the *Bentley* factors. First, the comments were not egregious, especially in light of the entire summation and the context of the case. The second and third *Bentley* factors also do not support a finding of a denial of due process. Any prejudicial impact of the statements was neutralized by the trial judge's instructions to the jury. As discussed *supra*, both before and after the summations, the trial judge explicitly instructed the jury that the lawyers' summations were not to be considered as evidence. (T. 1139, 1165, 1189-90.) Finally, the Court finds that petitioner's "clear evidence of guilt demonstrates that [he] was not prejudiced" by these remarks even if they were improper. *Bradley*, 918 F.2d at 343. Accordingly, these comments do not support habeas relief in this case.

c. Claim Regarding Acting as an Unsworn Witness

Petitioner also contends that the prosecutor acted as an unsworn witness or offered her personal opinions during summation "[f]ourteen times." (Aff. 11.) However, petitioner only objected to one statement regarding medical treatment after the sexual abuse. (Def. T. 782:9-11.) The court overruled this objection, holding that

the "jury's recollection [would] control." (*Id.* at 782:13-16.) The Court finds that these comments did not make the prosecutor an unsworn witness because she did not support the case with her own "veracity or position" when she made these remarks. *People v. Moye*, 12 N.Y.3d 743, 744 (2009) (citing *People v. Lovello*, 1 N.Y.2d 436, 439, 154 N.Y.S.2d 8, 136 N.E.2d 483 [1956]) ("An attorney may not "mak[e] himself an unsworn witness" by "supporting his case by his own" or anyone else's "veracity and position"). Moreover, "[a] prosecutor is not precluded from vigorous advocacy, or the use of colorful adjectives, in summation." *United States v. Rivera*, 971 F.2d 876, 884 (2d Cir. 1992) (citing *United States v. Wilner*, 523 F.2d 68, 74 (2d Cir. 1975)); *see also United States v. Jaswal*, 47 F.3d 539, 544 (2d Cir. 1995) (rejecting argument that prosecutor's characterization of the defendant's case as a "fairy tale" was improper).

These statements, taken in context, "were not expressions of personal belief but rather an appropriate response to [petitioner]'s challenge to the credibility of the People's witnesses." *People v. Ortiz*, 629 N.Y.S.2d 235, 236 (1995). For instance, the prosecutor referred to the lack of a motive for Mary or her friends to lie (Def. T. 721:22-24, 774:22-25), that the video footage indicated that petitioner was strong (Def. T. 766:22-23),[13] and that petitioner would not have fled the scene if the encounter had been consensual (Def. T. 770:15-19). Therefore, the Court finds that these type of statements by the prosecutor did not constitute improper vouching. *See Jaswal*, 47 F.3d at 544 (finding prosecutor's comments, such as stating "I think you can conclude" in

---

"Def. T." refers to the pagination in the trial transcript submitted by trial counsel (ECF No. 12).

[13] This evidence was used by the prosecutor to undermine trial counsel's argument that petitioner

could not have held Mary up during the altercation referenced earlier. (T. 1100-01.)

reference to the evidence, insufficient to demonstrate prosecutorial misconduct because they "clearly communicate[] nothing more than a comment on the evidence." (citation omitted)).

Even assuming *arguendo* that some of the prosecutor's comments constituted improper vouching, none of them affected the fairness of the trial. The comments were not egregious. Moreover, both the curative instructions and overwhelming evidence of guilt prevent this Court from concluding that there was any actual prejudice as to these statements. Petitioner has not shown that his conviction was uncertain, but for these comments made by the prosecutor during summation. "Where the specific remarks the prosecutor makes neither 'touch upon [n]or bolster the most potent of the government's evidence,' a court will not generally overturn a verdict." *Miller*, 2006 WL 298214, at *3 (quoting *United States v. Elias*, 285 F.3d 183, 192 (2d Cir. 2002)). Accordingly, habeas relief is not warranted because "the prosecutor's statements were brief and constituted only a small portion of her summation." *Figueroa*, 2011 WL 1838781, at *23; *see also Miller*, 2006 WL 298214, at *3 (finding that the prosecutor's allegedly improper statements did not warrant reversal because they "were brief and not a significant part of the State's argument or summation"); *Escobar v. Senkowski*, No. 02–cv–8066 (LAK/THK), 2005 WL 1307939, at *15 (S.D.N.Y. May 26, 2005) ("To render a trial fundamentally unfair . . . a prosecutor's improper comments during summation must be more than 'short and fleeting,' but must instead be 'so numerous and, in combination, so prejudicial that a new trial is required.'" (quoting *Tankleff v. Senkowski*, 135 F.3d 235, 253 (2d Cir. 1998))); *United States v. Rivera*, 22 F.3d 430, 437 (2d. Cir. 1994) ("A prosecutor's statements during summation, if improper, will result in a denial of due process rights only if, in the context of the entire summation, they cause the defendant substantial prejudice."). Accordingly, habeas relief on this ground is unwarranted.

### d. Claim Regarding Attempt to Shift the Burden

Petitioner claims that six references to petitioner's trial counsel's opening statement resulted in "burden shifting statements." (Aff. 12.) These statements focused on petitioner's claims that: (1) he did not use the men's bathroom because he found it too dirty; and (2) the encounter was sexual. (*See* Aff. Ex., ECF No. 10-1 at 18.) At trial, petitioner only objected to the comments regarding consent and was overruled. (Def. T. 776:1-15.) After summation, petitioner's trial counsel argued that the prosecutor's statements shifted the burden to defendant and moved for a mistrial. (T. 1207.) The court denied the application, finding that nothing said by the prosecutor shifted the burden to petitioner. (T. 1208.) For the reasons discussed earlier, the prosecutor was permitted to rebut trial counsel's assertion (in the opening and summation) that the encounter was consensual. A prosecutor does not shift the burden by simply pointing out to the jury that there is no factual support for a defense theory of the case that was articulated in an opening or closing statement. *See Ford v. Ricks*, No. 01-CV-0775A (VEB), 2007 WL 9225082, at *7 (W.D.N.Y. Feb. 27, 2007) ("Although a prosecutor may not suggest that a defendant has an affirmative obligation to present evidence on his own behalf, the Second Circuit has recognized that once a defendant does in fact put on a defense case, the prosecutor may fairly comment on the defense's failure to call witnesses to support his factual theory." (citations omitted)). The Court also does not find that the comment regarding the bathroom concerning. (Def. T. 741:16-21.) It did not shift the burden regarding the actual crime, but merely

discredited a purported reason for petitioner not using the men's bathroom, where the security camera footage put petitioner in the very bathroom he claimed to have been filthy. (T. 977-78.)

However, even assuming that such statements did, in fact, shift the burden, it did not create a constitutional issue in this case. As the Second Circuit has explained,

> When such a [burden-shifting] comment has been made, the court should sustain, not overrule, the defendant's objection, and it would be well advised to caution the government against making such arguments and to make a precautionary statement directly to the jury that the defendant has no such obligation. Nonetheless, the trial court's instructions to the jury at the close of the summations were entirely proper, repeatedly stating that the government bore the burden of proving each element of its case beyond a reasonable doubt . . . .[14]

*United States v. Walker*, 835 F.2d 983, 989 (2d Cir. 1987). Here, the judge ensured that there was no confusion on where the burden lies. In particular, during jury instructions, the court emphasized that the prosecution has the burden of proving beyond a reasonable doubt "each and every element of the crimes which defendant is charged" (T. 1228-29), and that "[t]his burden remains upon the prosecution throughout the trial and never shifts to the defendant. No defendant is required to prove his innocence. The defendant does not have to prove or disprove anything," (T. 1229). The court further

instructed the jury that "[t]he defendant did not testify in this case. I charge you that the fact he did not testify is not a factor for which an inference unfavorable to the defendant may be drawn." (T. 1229.) Therefore, even assuming *arguendo* that the cited statements were improper, the comments were not severe and the measures taken by the trial court were sufficient to eliminate any potential prejudice. Moreover, such statements would have had no impact on the verdict in light of the overwhelming evidence. Accordingly, habeas relief on this ground is denied.

### e. Claim Regarding Attacking Counsel Rather Than the Evidence

Petitioner also argues that the prosecutor attacked defense counsel five times. (Aff. 12; ECF No. 10-1 at 1.) Although petitioner correctly notes that direct attacks on the credibility or motives of defense counsel are not permissible, *United States v. Friedman*, 909 F.2d 705 (2d Cir. 1990), "a prosecutor does have the right to comment on the defense counsel's argument during summation," *Mickens v. United States*, 53 F. Supp. 2d 326, 332 (E.D.N.Y. 1999) (citing *United States v. Caputo*, 808 F.2d 963, 968 (2d Cir. 1987)); *see also United States v. Marrale*, 695 F.2d 658, 667 (2d Cir. 1982) (holding that the prosecutor's comments in direct response to defense counsel's arguments were permissible and that the trial court was in "a better position" to evaluate the defense counsel's tactics making the prosecutor's response proper).

Here, petitioner argues that it is "improper for the prosecutor to use inflammatory language which appeals to the sympathies and fears of the jury." (Aff. 12 (citing *Ortiz*, 497 N.Y.S.2d at 679.)

---

[14] As noted *supra*, while making these statements regarding consent, the prosecutor also informed the

jury that what he and petitioner's trial counsel said during summations was "not evidence." (T. 1139.)

However, the prosecutor's statements in *Ortiz* were much more severe. For instance, the prosecutor said, "Is the Defense Counsel arguing to you that [the victim] should have been cut more than one time; there should have been more holes?" and "in his most egregious accusation suggested defense counsel might know where the knife was." 497 N.Y.S.2d at 680. In the instant matter, the prosecutor's comments are generally in direct response to trial counsel's assertions throughout the trial. As discussed *supra*, the prosecutor rebutted trial counsel's theory of consent and also rehabilitated Mary's credibility. (Def. T. 721-722.)

In any event, to the extent the prosecutor in her summation should not have referred to certain questions by petitioner's trial counsel on cross-examination of the complainant (such as regarding her weight) as "offensive," (Tr. 1135), neither that comment nor any of the other alleged attacks on defense counsel, deprived the petitioner of a fair trial. First, the prosecutor's conduct was not severe under the first *Bentley* factor.[15] Again, any potential prejudice from the prosecutor's comments was cured by jury instructions that reminded jurors, among other things, that the arguments and remarks of counsel are not evidence. In particular, the court instructed the jury that: (1) statements counsel during opening and summations of counsel are not evidence (T. 1212); (2) the only evidence comes from witness testimony and exhibits that have been admitted into evidence (T. 1212); (3) the jury is not to be affected by sympathy or bias or any other consideration outside the evidence (T. 1214); and (4) the defendant has no obligation to prove his innocence (T. 1229). *See Gonzalez v.*

*Sullivan*, 934 F.2d 419, 424 (2d Cir. 1991) (holding prosecutor's error in summation was remedied by trial court's instructions to the jury); *see also United States v. Rivera,* 971 F.2d 876, 885 (2d Cir. 1992) (finding that the trial court's instructions cured any prejudice arising from prosecutorial error). Finally, the proof of petitioner's guilt was overwhelming and, thus, the alleged comments were harmless. *See Bentley,* 41 F.3d at 824 (holding that review of a *habeas corpus* challenge based upon prosecutorial misconduct includes consideration of "whether the conviction was certain absent the prejudicial conduct"). Accordingly, these comments do not provide a basis for habeas relief in this case.

### f. Claim Regarding Mischaracterization of the Evidence

Petitioner also contends that the prosecutor mischaracterized the evidence during summation. (Aff. 12.) Specifically, the petitioner claims that: (1) the prosecutor incorrectly stated that Mary had thrown her phone in the garbage pail during the encounter with petitioner; (2) that Mary's dress was pulled down; (3) the prosecutor mischaracterized the DNA expert testimony during summation; and (4) that the prosecutor misstated Mary's testimony that her tampon was pushed "up" instead of "aside" as he attacked her.[16] (Aff. 12-13.) As discussed below, the prosecutor was permitted to argue reasonable inferences that could be drawn from the evidence and any slight variation between the argument and the evidence (such as the condition of the tampon) certainly did not rise to a constitutional magnitude.

---

[15] The Court notes that the comment was made in the context of arguing that the complainant's demeanor did not change no matter how difficult the questioning was. (T. 1135.)

[16] Petitioner also points to comments regarding the lack of evidence that the encounter was consensual (Def. T. 751-52.) The Court has already discussed why these comments were not improper and does not repeat that analysis here.

1.  The Prosecutor's Remark Regarding Mary's Cell Phone

Petitioner argues that the prosecutor mischaracterized testimony when she stated that the "complainant threw [her cell phone] in [a garbage pail.]" (Aff. 12.) However, petitioner misstates the prosecutor's actual comments. The prosecutor stated to the jury that: "[Mary's] phone got knocked out of her hands and that was later corroborated by the fact that John Duggan went into the bathroom . . . and found it in the garbage pail by the sink." (T. 1164.) The prosecutor then emphasized this piece of evidence to show that there was some form of fight, stating, "[T]hat tells you that there was a struggle. Why does it tell you there was a struggle? How does that corroborate Mary's testimony? Because no 22-year old girl is throwing her phone into the garbage pail." (T. 1164.) The prosecutor did not argue that Mary threw her phone in the garbage, but rather was arguing (as permitted) that the fact that the phone was in the garbage implied that a struggle had taken place (rather than a consensual encounter).

2.  The Prosecutor's Remark on Mary's Dress

Petitioner points to prosecutor's comments about Mary's dress being pulled down during the struggle. (Def. T. 755:18-22.) The prosecutor's remarks were again a reasonable inference that could be drawn from the trial testimony. During direct examination, Mary testified that when petitioner initially became aggressive, he "started grabbing her neck and the dress came down . . ." (T. 658.) During summation, the prosecutor stated that as Mary struggled, petitioner "groped her, pulled her dress down, touched her breasts and touched her all over the body." (T. 1169.) Given the testimony, it was certainly permissible for the

prosecutor to argue from the evidence that the petitioner was the cause of the dress coming down, and particular use of the word "pull" (as opposed to "the dress came down") was not significant in the context of the entire evidence regarding the non-consensual nature of the encounter.

3.  The Prosecutor's Remark Regarding the Condition of the Tampon

Similarly, the prosecutor's remarks on the location of Mary's tampon were not improper. (Def. T. 764:8-11.) Mary testified that petitioner shoved the tampon to *the side* during the attack. (T. 660-61.) During summation, the prosecutor explained that, if rape was to occur while Mary wore her tampon, the tampon would be *pushed up*. (T. 844, 1178.) The difference between "pushed to the side" or "pushed up" was not material to the underlying evidence and argument, and certainly did not constitute prosecutorial misconduct.

4.  The Prosecutor's Remark on DNA Expert Testimony

Finally, the prosecutor's comments on the Chillseyzn's testimony were permissible. During summation, the prosecutor explained to the jury that testing for DNA on skin cells would have been a waste of time:

>   They're looking for stains. They're looking for blood, they're looking for semen, they're looking for secretions like saliva. They are not testing for skin cells. And the reason for that is there would be no way for them to visually look at a swab and determine which skin cells belong to who. Those skin cells are labeled Mary's and the defendant's. They are not labeled

male, female. You would have to test all of the skin cells that are found on that swab in order to find whether any of those skin cells are foreign to Mary's body. It doesn't make sense. It is no efficient, it is not cost effective.

(T. 1200.) These comments were referring to Chillseyzn's testimony during re-direct examination, in which Chillseyzn explained that under a hypothetical posed by petitioner's trial counsel, in which the penis entered the vaginal cavity, it would not be possible to identify skin cells from one person or another.[17] (T. 1041.) Thus, this was a fair comment on the evidence.

In any event, even assuming *arguendo* that these comments could be construed as a mischaracterization of the evidence, it does not rise to the level of a constitutional violation. First, the comments were not egregious and it cannot be said that the statements "infected the trial" in such a manner as to deny due process and cause the resulting conviction. In *Donnelly*, the Supreme Court found that a prosecutor's remark, while unambiguously improper, was merely trial error, and that the "distinction between ordinary trial error of a prosecutor and that sort of egregious misconduct" that "amount[s] to a denial of constitutional due process" must be maintained. 416 U.S. at 647-48. Here, none of the prosecutor's comments rise to the level of egregious misconduct. Moreover, any potential prejudice from these prosecutor's comments was again cured by jury instructions that reminded jurors, among other things, that the arguments and remarks of counsel are not evidence. Additionally, as discussed *supra,* even if the Court were to accept petitioner's argument that these comments constituted

misconduct, the evidence of petitioner's guilt was so overwhelming that the outcome would have been the same absent the alleged prejudicial conduct. *See Gonzalez*, 934 F.2d at 424.

In sum, having analyzed all of petitioner's prosecutorial misconduct claims on the merits, the Court concludes that the statements in the prosecutor's summation raised by petitioner do not, individually or collectively, rise to the level of a constitutional violation given the nature of the statement, the instructions by the court, and the overwhelming proof of guilt.

## IV. CONCLUSION

For the foregoing reasons, this Court finds that petitioner has demonstrated no basis for habeas relief under 28 U.S.C. § 2254. Accordingly, this petition for a writ of habeas corpus is denied in its entirety.

---

[17] Specifically, Chillseyzn said that there "will be millions of [skin cells] present from the victim. So identifying skin cells from one person or another is not possible." (T. 1041.)

Because petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for the purposes of any appeal. *See Coppedge v. United* States, 369 U.S. 438, 444-45 (1962).

The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

JOSEPH F. BIANCO
United States Circuit Judge
(sitting by designation)

August 9, 2019
Central Islip, New York

\*\*\*

Petitioner is proceeding *pro se* at Altona Correctional Facility, 555 Devils Den Road, P.O. Box 3000 Altona, NY 12910. Respondent is represented by Madeline Singas of the Nassau County District Attorney's Office, 262 Old Country Road, Mineola, New York 11501.